THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| A. L. ENTERPRISES INC., a Nevada Corp. ) | Case No.  2:08CV536 |
| Plaintiff,                         ) | |
| v.                                  ) | **MEMORANDUM DECISION** |
| SEBRON, a California sole proprietorship   ) | |
| owned and operated by SERGE L. | |
| BRONSTEIN, an individual            ) | |
| Defendants.                    ) | |
|                                     ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  INTRODUCTION

On July 16, 2008, Plaintiff A. L. Enterprises Inc. (ALE), a manufacturer of male chastity devices, filed this counterfeiting and federal trademark infringement lawsuit against Sebron, a California sole proprietorship.  An almost identical complaint, filed previously against Serge Bronstein, the owner and operator of Sebron, as an individual, was dismissed for lack of personal jurisdiction, although the Court in that case declined to address whether it had jurisdiction over Bronstein's company, Sebron.  When ALE filed this suit against Sebron, Sebron filed a Motion to Dismiss, claiming Res Judicata, lack of personal jurisdiction, and failure to state a claim.  The Court finds Sebron's arguments unpersuasive, and therefore denies the Motion to Dismiss.

## II.  ANALYSIS

**A.  Res Judicata Does Not Preclude This Claim.**

Sebron's first argument in its Motion to Dismiss is that this case is almost identical to the first case brought against Mr. Bronstein as an individual, which was dismissed.  The motion states that "The same case is now being brought against the Defendant's business, which is owned solely be the defendant, has no employees besides the Defendant and is not a corporation.  Since this is essentially the same lawsuit, the principals of res judicata apply."  In response ALE argues that Sebron is judicially estopped from making this argument.  The Court agrees.

*Res Judicata*, or claim preclusion, prevents parties from relitigating issues that were or could have been raised in a prior action where there has been a final judgment.[1]  "To apply the doctrine of *res judicata*, three elements must exist: (1) a [final] judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits."[2]  In this case, Sebron is judicially estopped from arguing that Sebron and Bronstein are the same party, so *res judicata* does not preclude this action.

Mr. Bronstein argued in the previous case that he and Sebron are separate entities: "The Defendant is the improper party in this case.  Any legal action should be brought against the Defendant's company, under which he does business, not against him as an individual."  Based on Mr. Bronstein's representations, the Court dismissed the case for lack of personal jurisdiction over Mr. Bronstein personally, and ruled that while Sebron may be subject to jurisdiction, Mr. Bronstein was not.  The Court explicitly stated: "As Plaintiff has not brought suit against Defendant's company, the Court need not determine whether the Court has jurisdictions over this

---

[1] *Wilkes v. Wyo. Dep't of Empl. Div of Labor Stds.,* 314 F.3d 501, 504 (10th Cir. 2002).

[2] *Id* (internal citations omitted).

entity."  *Now*, in the case currently before the Court, Sebron argues that it is essentially the same entity as Mr. Bronstein, which is the opposite of what it argued in the previous case.

Judicial estoppel precludes Sebron's sudden change in position.  Judicial estoppel is an equitable doctrine designed "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."[3]  When a party successfully asserts a position in litigation, "he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."[4]  Clearly, Mr. Bronstein is now taking a position regarding his relationship with Sebron that is inconsistent with his previous position.  A decision by this Court that Sebron and Mr. Bronstein are the same, following the previous Court's decision that they are separate, would "create the perception that either the first or the second court was mislead."[5]

**B.  The Court has Personal Jurisdiction**.

Sebron argues that this Court lacks personal jurisdiction over it.  The motion states that Sebron's principal and only location is in Fullerton, California, and that it has no other offices, locations or representatives anywhere else.  At this stage in the proceedings, a plaintiff need only make a *prima facie* showing that personal jurisdiction is proper.[6]  The allegations in the

---

[3] *Eastman v. Union Pac. R.R.,* 493 F.3d 1151, 1156 (10th Cir. 2007)(quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)).

[4] *Johnson v. Lindon City Corp*, 405 F.3d 1065, 1069 (10th Cir. 2005)(quoting *Davis v. Wakelee,* 156 U.S. 680, 689 (1895)).

[5] *New Hampshire,* 532 U.S. at 750.

[6] *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999).

complaint are accepted as true to the extent that they are uncontroverted by the defendant's affidavits,[7] and conflicting statements of fact are resolved in favor of the plaintiff.[8]

For reasons extensively discussed in ALE's Memorandum in Opposition to Defendant's Motion to Dismiss (pp. 5-15), this Court finds that it does have specific personal jurisdiction over Sebron. ALE has provided evidence that Sebron runs a number of highly interactive websites, including at least two online stores at www.sebronco.com and www.jtoulet.com. Sebron provides visitors with a shopping cart feature that allows them to select multiple products for purchase. Visitors to Seron's sites can purchase items over the website using Google checkout or a number of major credit cards. Sebron offers to sell products into Utah through its multiple internet stores. In short, ALE alleges that Sebron purposefully uses his website to reach a large number of potential buyers, including those in Utah, and benefits from that exposure. Courts have held that "[s]ellers cannot expect to avail themselves of the benefits of the internet-created world market that they purposefully exploit and profit from without accepting the concomitant legal responsibilities that such an expanded market may bring with it."[9]

The only evidence of actual sales in Utah in this case were sales made to a private investigator working for the plaintiffs. Courts in similar cases have held, however, that it was not the sales alone that provided a basis for jurisdiction; rather, it was the highly commercial nature of the websites that made exercising jurisdiction proper. The jurisdictional question revolves around the *nature and quality* of the commercial activity, as opposed to the *quantity* of sales. So personal jurisdiction is proper for a highly commercial site even when there is only

---

[7] *Behagen v. Amateur Basketball Ass'n,* 744 F.2d 731, 733 (10th Cir. 1984).

[8] *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir. 1995).

[9] *Dedvukaj v. Maloney,* 447 F.Supp.2d 813, 820 (E.D.Mich. 2006).

minimal or no evidence of actual sales into the forum. Advertising and attempting to sale products through an online store to residents of the forum constitutes purposeful availment.[10]

Plaintiff also alleges that Sebron has known of ALE's CB-3000 and Curve marks since at least February 2008. Sebron has been intentionally trading off of ALE's goodwill with full knowledge of ALE's rights and location in Utah. Sebron continues to knowingly distribute fakes of ALE products and knows or should know the negative effects this could have on ALE's business. It also knows that ALE is located in Utah and that the brunt of the injury will be felt here in the form of weakened trademarks and lost sales. Given its efforts to sell into Utah counterfeits of a product produced by a company located in Utah, Sebron should have reasonably anticipated being haled into this Court to answer for its activities.

**C. Plaintiff's Claims of Counterfeiting and Trademark Infringement are not Without Merit.**

Sebron further argues that ALE's claims are without merit. In deciding a motion to dismiss, the Court accepts well-pleaded allegations of the complaint as true and construes them in the light most favorable to the plaintiff.[11] This Court, then, needs to determine whether the complaint includes factual allegations sufficient to "raise a right to relief above the speculative level."[12]

---

[10] *See, e.g., Rainy Day Books, Inc. v. Rainy Day Books & Café, L.L.C.,* 186 F.Supp.2d 1158, 1165 (D. Kan. 2002)(finding personal jurisdiction where the evidence showed only sales to plaintiff); *Stomp, Inc. v. Neato,* 61 F.Supp.2d 1074, 1078 (C.D.Cal. 1999)(noting that although sales were to plaintiff, the defendant "placed its products for sale with the intent that they reach internet users, including Californians, . . . and thus was subject to suit there.")

[11] *Alvarado v. KOB-TV, L.L.C.* 493 F.3d 1210, 1215 (10th Cir. 2007).

[12] *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007).

Sebron asserts that the only registered trademark that ALE has is for CB-3000, and that Sebron has complied with demands not to use that particular trademark. The unauthorized use of a counterfeit of a trademark in a way that is likely to cause confusion in the marketplace is actionable under the Lanham Act.[13] No statute or case law indicates that a counterfeiting cause of action lies only when a device is patented. In addition, registration is not necessary for common law trademark infringement; all that is required is that the plaintiff establishes a protectable interest in the mark, the defendant's use of the mark in commerce, and likelihood of consumer confusion.[14]

ALE has registered the CB-3000 mark. Sebron was engaged in distributing counterfeits under the CB-3000 mark; although it has now complied with demands not to use that particular trademark. ALE has provided evidence that it has a protectable interest in the Curve mark and that Sebron is using that mark in commerce in an attempt to confuse consumers and profit thereby. Further, ALE has alleged that the designations CB-4000 and JT-3000 that Sebron now uses are confusingly similar to the family of ALE products sold under the CB-2000, CB-3000, and CB-6000 names. ALE has demonstrated more than a speculative right to relief. Therefore, the 12(b)(6) motion is hereby dismissed.

## VI. CONCLUSION

The Court finds that this action is not barred by *res judicata,* that the Court does have specific personal jurisdiction, and that ALE's claims based on trademark infringement and

---

[13] *Australian Gold, Inc. V. Hatfield,* 436 F.3d 1228, 1239 (10th Cir. 2006).

[14] *Donchez v. Coors Brewing, Co.,* 392 F.3d 1211, 1219 (10th Cir. 2004).

counterfeiting are colorable claims which survive the Motion to Dismiss. The Court hereby denies Sebron's Motion to Dismiss.

    SO ORDERED.

    DATED this 17th day of September , 2008.

    BY THE COURT:

*/s/ David Sam*

DAVID SAM

SENIOR JUDGE

U.S. DISTRICT COURT